IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TODD MCDANIEL**                                                                                                **PLAINTIFF**

**V.**                                                                  **CIVIL ACTION NO. 3:19-CV-254-HTW-LRA**

**HAZLEHURST CITY SCHOOL
DISTRICT AND JOHN DOES 1-10**                                                                  **DEFENDANTS**

**ORDER**

BEFORE THIS COURT is the *Motion to Dismiss Certain Claims by the Plaintiff* **[Docket no. 44],** filed on October 24, 2019, by Defendant Hazlehurst City School District ("the School District" or "Defendant"). Defendant filed its Motion under the auspices of Federal Rule of Civil Procedure 12(b)(6)[1]. Defendant's Motion argues that the following claims alleged in Plaintiff Todd McDaniel's ("Plaintiff" or "McDaniel") Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted: (1) Plaintiff's Due Process claim that he had an expectation of continued employment as the athletic director and head football coach; (2) Plaintiff's Retaliatory Discharge claim; and (3) Plaintiff's Fair Labor Standards Act ("FLSA")[2] claim. For the reasons stated herein, this court GRANTS Defendant's Motion for Partial Dismissal [Docket no. 44] and dismisses the named claims from this lawsuit.

---

[1] Federal Rule of Civil Procedure 12 provides:
(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: … 6) failure to state a claim upon which relief can be granted;
Fed. R. Civ. P. 12

[2] The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments. Wages and the Fair Labor Standards Act, U.S. Department of Labor Website (August 4, 2021, 11:40 am) https://www.dol.gov/agencies/whd/flsa.

## I.     FACTUAL HISTORY

This case arises out of the employment termination of Plaintiff McDaniel. McDaniel was an employee of the School District from 2016[3] to June 30, 2018. During that time, McDaniel served as Director of Operations, Head Football Coach, and Athletic Director. McDaniel maintains that he was required to be licensed with the Mississippi Department of Education to obtain and maintain his employment positions.

In April 2018, the School District informed McDaniel that his contract of employment would not be renewed for the 2018-2019 school year. McDaniel contends that he was a licensed administrative employee and had an expectation of continued employment. As a licensed employee, he claims he was entitled to procedural and substantive due process rights. These rights, adds McDaniel, included a right to a hearing and notice of the reasons of his non-renewal.

McDaniel asserts that he was wrongfully terminated from his employment with the School District in violation of his due process rights guaranteed by the Fourteenth Amendment to the United States' Constitution[4] and in violation of Title 42 U.S.C. § 1983.[5] McDaniel also argues that the school district retaliated against him by terminating his employment for his mixed speech as a school

---

[3] McDaniel's Amended Complaint alleges that, at the time of the filing of his Complaint, he had been employed continuously for four (4) years by the School District [Docket no. 43, ¶ 18]; however, neither party has provided any further information regarding McDaniel's employment status prior to 2017. This court, therefore, looks only to the employment contract provided by the parties herein and identified as Docket no. 43-1.

[4] U.S. CONST. amend. XIV, § 1 states:
    No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[5] Title 42 U.S.C. § 1983 states in its pertinent part:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

district employee and private citizen about a matter of public concern. Finally, McDaniel argues that the School District failed to pay him for overtime work as required by the FLSA.

McDaniel entered into an employment contract with the School District on July 25, 2017, "as a licensed employee as Director of Operations with a salary of $83,739.93." [Docket. No. 43, ¶ 7]. The employment "contract [was] a standard contract for employees and is used statewide and approved by the State Board of Education for employees who are licensed and are covered by the Mississippi Education Code of Ethics, Standard of Conduct adopted by the State Board of Education and the laws of the State of Mississippi." [Docket. no. 43, ¶¶ 7-12]. McDaniel "was required to have a valid teacher's license from the State of Mississippi pursuant to the contract. [Docket. no. 43, ¶¶ 7-12]. McDaniel alleges that he met the qualifications for a licensed teacher and the School District treated him as a licensed teacher covered by the requirements of the Mississippi Education Employment Procedures Law of 2001 ("EEPL"). [Docket. no. 43, ¶¶ 9-40].

Thereafter, "in July or August of 2017, McDaniel entered into a second employment contract as head football coach at a salary of $8,000.00 and athletic director of the Hazlehurst City School District for a salary of $10,000.00" for the 2017-2018 school year[6]. [Docket. no. 43, ¶¶ 8-9]. McDaniel alleges he was required to have "a valid teacher's license from the State of Mississippi[6] to fill the position of head football coach and athletic director." [Docket no. 43, ¶¶ 8-12], and that he did, in fact, possess "a valid teacher's license [issued by] the State of Mississippi." [Docket. no. 43, ¶¶ 8-9]. McDaniel, however, provides no further evidence in support of these allegations.

---

[6] Plaintiff concedes he has been unsuccessful in locating this second employment contract; however, the parties agree as to the titles and salary amounts asserted in Plaintiff's Amended Complaint.

3

On April 13, 2018, McDaniel received a letter from the School District's Superintendent, Cloyd Garth, Jr ("Garth"), notifying McDaniel "that due to positional restructuring at the district level, [his] employment with the Hazlehurst City School District had been 'non-renewed' for the 2018-2019 school year. [Docket. no. 43, ¶ 14}. Garth, in his letter, does not specify a specific employment title; rather, the letter appears to address McDaniel's employment with the School District in all capacities.

On April 26, 2018, McDaniel sent Garth a letter requesting a hearing on the non- renewal of his employment with the School District as the Director of Operations [Docket no. 43-3]. McDaniel asserts that the School District Board of Trustees was required by state law to provide him a hearing, upon his request, on the non-renewal of his employment contracts. [Docket. no. 43, ¶¶ 9-40].

On May 14, 2018, the School District offered McDaniel an "At-Will Statement of Assignment" contract for the position of Director of Facilities for the 2018-2019 school year at an hourly rate of $40.77. [Doc. No. 43, ¶ 23, Doc. No. 43-4]. The same day, on May 14, 2018, McDaniel sent Garth an addendum to his previous letter, dated April 26, 2013, clarifying that he was "requesting a hearing in response to the letter of non-renewal of employment for the '2018-2019' school year as Director of Operations, Athletic Director and Head Football Coach...." [Docket no. 43, ¶ 26 and Docket no. 43-5].

On May 21, 2018, Garth responded to McDaniel's request(s) for a hearing, notifying McDaniel that his "request [was] denied due to guidelines as outlined within district policy." [Docket. no. 43-6]. The response letter further instructed McDaniel to contact Garth "with questions or concerns regarding [the] matter." [Docket no. 43-6].

4

Subsequently, on June 30, 2018, Garth sent McDaniel a letter notifying him that his "employment with the Hazlehurst City School District will end on Saturday, June 30, 2018." [Docket no. 43-7]. Garth, via this letter, instructed McDaniel to "return all district property which includes computer, keys, and cell phones." [Docket. No. 43-7]. Garth again informed McDaniel to contact him "with any questions or concerns." [Doc. No. 43-7].

In support of his First Amendment[7] Retaliation claim, McDaniel's Second Amended Complaint [Docket no. 43] alleges the following:

> 33. In the fall of 2017, the Hazlehurst School Board hired Dr. Earl Watkins as a Special Consultant; that Plaintiff…was employed at the Jackson [Mississippi] Public Schools where Dr. Watkins [had been] a superintendent; that Plaintiff McDaniel was aware that Dr. Watkins had been sued by the male principal of Chastain Middle School for sexual harassment and the principal's wife had sued Dr. Watkins for alienation of affection; and that a settlement was reached out of court.
>
> 34. That Plaintiff McDaniel expressed concern about the presence of Dr. Watkins on the grounds of the Hazlehurst Schools due to the allegations contained in the lawsuit in Jackson against Dr. Watkins; that it was a matter of public concern for the student body as well as the faculty; that Plaintiff spoke as a citizen as well as a public employee but his speech was not within his "ordinary job requirements"; that it was protected free speech… and that bias was created against him due to his free speech on the part of the Superintendent Garth and Board Members; and he was subsequently terminated due to his free speech.
>
> 35. Plaintiff made statements to employees and public citizens that were citizen speech and were matters of public concern about the awarding of contracts to consultants for high amounts…[that] these statements were made as to facts and issues which were outside his "ordinary job responsibilities" and resulted in bias against him, resulted in a demotion and subsequent hearing, and denial of his federal rights to a hearing.

McDaniel additionally asserts: "should the Plaintiff be found not to be a licensed employee falling under the protection of the [EEMPL], in the alternative, he would fall under the provisions

---

[7] Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I

of the FLSA, and as such he is entitled to be compensated for "an extraordinary amount of time" over the statutory forty (40) hour limit. [Docket no. 43, ¶ 47].

## II.   PROCEDURAL HISTORY

On April 11, 2019, Plaintiff filed his original Complaint against the School District and John Does 1-10[8]. [Docket no. 1]. The School District filed a motion to dismiss the Complaint. [Docket no. 6]. Plaintiff then filed an Amended Complaint on May 23, 2019. [Docket no. 22]. The School District, in response, filed several motions to dismiss the Amended Complaint. After a status conference with Magistrate Judge Linda R. Anderson, McDaniel agreed to dismiss all of the state law claims in his original Complaint and Amended Complaint, with prejudice, and the School District agreed to withdraw all of its motions to dismiss.

Thereafter, the Court entered an Agreed Order memorializing the agreement reached between the parties and granting Plaintiff leave to file a second amended complaint, which was to state clearly his federal retaliation and due process claims. [Docket no. 42]. The Agreed Order also granted the School District's right to "file any responsive pleading, including any motion to dismiss, within 20 days after [Mr. McDaniel had] filed his second amended complaint." [Docket. no. 42, pp. 2-3]. McDaniel has now filed his Second Amended Complaint [Docket No. 43], and the School District has filed its motion *sub judice* to dismiss that complaint.

---

[8] Plaintiff's Second Amended Complaint names John Does 1-10 as "individuals or public bodies as yet unknown and unidentified to Plaintiff, including but not limited to, the Hazlehurst School Board or other members of the Hazlehurst City School District who at material times assisted, facilitated, supervised, exercised control over and/or had responsibility for the employment actions which caused or contributed to Plaintiff's injuries and damages." [Docket no. 42, p. 2 at ¶ 3].

### III.     JURISDICTION

This court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1331[9], commonly referred to as federal question jurisdiction. As plaintiff's complaint alleges claims arising under the United States Constitution and federal statutes, this court has subject matter jurisdiction to hear those claims. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807, 106 S. Ct. 3229, 3231, 92 L. Ed. 2d 650 (1986).

### IV.     STANDARD OF REVIEW

The School District attacks McDaniel's Second Amended Complaint under Federal Rule of Civil Procedure (12)(b)(6), which provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(6). To survive such a motion, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (quoting *Twombly*, 550 U.S. 570). The allegations of the complaint must be viewed in a light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (construing 12(b)(6) motions, court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff").

---

[9] Title 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## V.     LEGAL ANALYSIS

### A.  DUE PROCESS

McDaniel claims that he had an expectation of continued employment that should have entitled him to a hearing before his termination.  McDaniel, however, can only claim a violation of due process if he had a property right in his continued employment, which would have entitled him to a hearing. The School District has conceded that McDaniel, by way of his Second Amended Complaint, has alleged facts sufficient to establish that he had a protected property interest as the Director of Operations [Docket no. 45, p. 15].  This court's due process analysis, therefore, focuses only on McDaniel's employment as Athletic Director and Head Football Coach.

The Due Process Clause of the Fourteenth Amendment protects liberty and property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Before a person may be deprived of his or her liberty or property interests, that person must be afforded a hearing. *Boddie v. Connecticut*, 401 U.S. 371, 377-78, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).  Whether Plaintiff possessed such a property interest is "determined by reference to state law," *see  Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 252 (5th Cir.1984), and must "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings," *see Blackburn v. City of Marshall,* 42 F.3d 925, 936–37 (5th Cir.1995).

In Mississippi, a school employee's property interest in continued employment, if it exists at all, is codified in Title 37 of the Mississippi Code.  The School District contends that McDaniel has failed to allege in his Second Amended Complaint any violation of a state law that would give him a property right in continued employment as Head Football Coach and Athletic Director, such that his termination from these positions without the benefit of a hearing would constitute a Fourteenth Amendment Due Process violation.

### 1. *Continued Employment/Termination of Employment*

The process for continued employment for "licensed employees"[10] and "non-instructional employees"[11], is outlined at Miss. Code Ann. § 37-9-17(1)[12]. This State code section sets up a three-step process in which (1) the principal of the school recommends the employee to the school district superintendent, (2) the school district superintendent recommends the employee to the school district, and (3) unless good cause exists, the school district then affirms. Miss. Code Ann. § 37-9-17(1).

A school district employee may be entitled to certain due process procedures prior to termination of employment. These procedures can stem from state law or from additional guarantees, above and beyond the state law, granted by the school district. *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997).

### a) **Mississippi Law**

The procedure for non-renewal of public-school employees is codified in the Education Employment Procedures Law of 2001 ("EEPL"), Miss. Code Ann. § 37-9-101, *et seq*. The EEPL utilizes a special definition of "employee", separate from the rest of Title 37 of the Mississippi Code. For the purposes of the EEPL, the term "employee" means:

> (a) Any teacher, principal, superintendent or other professional personnel employed by the local school district for a continuous

---

[10] Miss. Code Ann. § 37-9-1 defines licensed employee as: "any other employee of a public school district required to hold a valid license by the Commission on Teacher and Administrator Education, Certification and Licensure and Development."

[11] Miss. Code Ann. § 37-9-1 defines non-instructional employee as: "all employees of school districts other than superintendents, principals and licensed employees."

[12] Miss. Code Ann. § 37-9-17(1) states, in its pertinent part:
> . . . [T]he principal of each school shall recommend to the superintendent of the local school district the licensed employees or noninstructional employees to be employed for the school involved . . . . If such recommendations meet with the approval of the superintendent, the superintendent shall recommend the employment of such licensed employees or noninstructional employees to the local school board, and, unless good reason to the contrary exists, the board shall elect the employees so recommended.

> period of two (2) years with that district and required to have a valid license issued by the State Department of Education as a prerequisite of employment; or
>
> (b) Any teacher, principal, superintendent or other professional personnel who has completed a continuous period of two (2) years of employment in a Mississippi public school district and one (1) full year of employment with the school district of current employment, and who is required to have a valid license issued by the State Department of Education as a prerequisite of employment.

Miss. Code Ann. § 37-9-103(1).

An employee, as defined in Miss. Code Ann. § 37-9-103(1), is entitled to the nonrenewal notice described in Miss. Code Ann. § 37-9-105:

> If a recommendation is made by the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given no later than the following:
> \* \* \*
> (b) If the employee is a teacher, administrator or other professional educator covered under Sections 37-9-101 through 37-9-113, the superintendent, without further board action, shall give notice of nonreemployment on or before April 15, or within ten (10) calendar days after the date that the Governor approves the appropriation bill(s) comprising the state's education budget for funding K-12, whichever date is later.

Upon receiving written notice under Miss. Code Ann. § 37-9-105, the employee may submit a written request for specific reasons for nonreemployment and/or a hearing. Miss. Code Ann. § 37-9-109.

The School District contends that McDaniel was not entitled to the process described in the EEPL for his roles as Athletic Director and Head Football Coach because he is not a "licensed employee" as defined in Miss. Code Ann. § 37-9-1. A licensed employee is an "employee of a public school district required to hold a valid license by the Commission on Teacher and Administrator Education, Certification and Licensure and Development." Miss. Code Ann. § 37-9-1. Employees

other than superintendents, principals, and "licensed employees" are considered "non-instructional employees." Miss. Code. Ann. § 37-9-1.

The Commission on Teacher and Administrator Education, Certification and Licensure and Development ("the Commission") is a division within the Mississippi Department of Education, which "make[s] recommendations to the State Board of Education regarding standards for the certification and licensure and continuing professional development of those who teach or perform tasks of an educational nature in the public schools of Mississippi." Miss. Code Ann. § 37-3-2. The Commission has established various license frameworks for teachers and administrators, however, the common thread of these licenses is that they require the person to be an educator[13].

The term "licensed employee" is not used in the EEPL. Rather than use the specific term "licensed employee," the legislature chose to define an EEPL employee as a "teacher, principal, superintendent or other professional personnel" who, *inter alia*, is "required to have a valid license issued by the State Department of Education." Miss Code Ann. § 37-9-103(1). Interestingly, the predecessor to the current EEPL, the "Public School Fair Dismissal Act of 1974," defined an employee as "any teacher, principal, superintendent elected by a board of trustees, and other professional personnel employed by any public school district of this state and required to have a valid *certificate* issued by the State Department of Education as a prerequisite of employment." Miss. Laws 1974, Ch. 577, § 2. The word "certificate" was replaced with "license" in 1997. Miss. Laws 1997, Ch. 545, § 22.

---

[13] Miss Code Ann § 37-3-2 applies to "those who teach or perform tasks of an educational nature in the public schools of Mississippi".
Miss. Code. Ann. § 37-3-2(1) (West)

McDaniel's Second Amended Complaint alleges that as a licensed employee, he had an expectation of "procedural and substantive due process of law before being terminated, which includes the right to a hearing and notice of the reasons for nonrenewal. This contention, however, is conclusory. McDaniel provides no evidence to show that he was either entitled to a termination hearing or that he was led to believe that he was entitled to a termination hearing for the roles of Athletic Director and Head Football Coach. The plaintiff is required to state sufficient evidence to support his claim, and this court is not obliged to accept legal conclusions in place of actual evidence. *Iqbal*, 556 U.S. at 662.

Although this matter is before the court on a motion to dismiss, this court may change the motion to one for summary judgment and consider evidence outside of the pleadings or public record. *Burns v. Harris Cnty. Bail Bond Bd.,* 139 F.3d 513, 517 (5th Cir.1998). McDaniel, however, has provided no additional evidence, such as his employment contract or the employee handbook, that would show that the School District guaranteed greater due process procedures for these employment positions than those authorized by the Mississippi Code. As such, this court concludes that McDaniel has failed to state a due process claim for the roles of Athletic Director and Head Football Coach based on his employment contracts or a school district policy.

### B. FIRST AMENDMENT RETALIATION CLAIM

McDaniel alleges that he spoke to school district employees and members of the public about a school district consultant (Watkins) who had been accused of sexual harassment at another school district (Jackson) and the high costs of consultants that was diverting school resources from the school district. McDaniel's alleged speech renders his First Amendment claim a "mixed speech" case. A mixed speech case is "a case in which an employee's speech contains elements of both personal and public concern..." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). An employee's

12

speech to fellow employees and his superiors concerning his superiors' alleged bias against him is a matter of private concern. *Id.* at 186-187; *Sanders v. Leake County Sch. Dist.*, 546 F. Supp.2d 351, 356-357 (S. D. Miss. 2008). However, "[r]eporting sexual harassment is speech of great public concern." *Johnson v. Louisiana*, 369 F.3d 826, 830-831 (5th Cir. 2004).

In order to assert a legally acceptable First Amendment retaliation claim, McDaniel had to allege sufficient facts that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse employment action." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000).

McDaniel alleges that he received notice of his non-renewal on April 16 or 17, 2018. Indisputably, thus, he has alleged an adverse employment action.

Next, McDaniel alleges that, in the Fall of 2017, he spoke to fellow employees and the public about Watkins's alleged sexual harassment behavior. Yet, he did not receive notice of his employment non-renewal until April 16 or 17, 2018 - almost a year later. In conjunction with the Watkins's matter, McDaniel further alleges that he spoke to fellow employees and the public about the high cost school district consultants were being paid.

Although McDaniel alleges that he spoke to fellow employees and the public about the sexual harassment of a school district consultant and the high costs of school district consultants, he fails to allege that either the superintendent or members of the school board were aware that he had spoken about these alleged matters of public concern. McDaniel was required to allege facts establishing that "his speech motivated the employer's adverse employment action." *Salge v. Edna Indep. Sch. Dist.*, supra, at 184; *Kennedy v. Tangipahoa Parish Library Bd. of Control*, supra, at

13

366. Settled jurisprudence teaches that plaintiff fails to allege a viable First Amendment retaliation claim when he fails to allege that his employer knew of his protected speech when the employer took an adverse action against the plaintiff. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001). If there is no allegation "that the [defendant] knew of the protected activity, [the plaintiff] cannot show that the activity motivated the retaliatory behavior. *Id*. at 604. McDaniel failed to allege not only when he trumpeted his protected speech, but where and who were present- whether such was proclaimed at a public forum, by text, video, at a teacher's meeting or in the hallways to passer-bys.

This court is certainly aware that, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.'" *Swanson v. Gen. Svcs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). In the case *sub judice*, however, as above emphasized, McDaniel fails to allege that the decision maker even knew about his alleged protected speech, and, further, that the proximity between the speech and the adverse employment action was about a year. These threadbare allegations are insufficient to state that "his speech motivated the employer's adverse employment action". See *Salge v. Edna Indep. Sch. Distr.*, supra, at 184; *Kennedy v. Tangipahoa Parish Library Bd. of Control*, supra, at 366.; *Beattie v. Madison County Sch. Dist.*, supra, at 604.

### C.  FLSA CLAIM

This court has found that Plaintiff does have a valid due process claim as to his protected property interest as the Director of Operations. In making this determination, the court finds that McDaniel's role as Director of Operations required him to be a licensed professional employee of the School District; as such, he is not subject to FLSA's overtime requirements. Title 29 U.S.C. §

14

213 (a)[14]. *See*, e.g. *Owsley v. San Antonio Indep. Sch. Dist.,* 187 F.3d 521, 523 (5th Cir. 1999) (holding that athletic trainers are exempt from the FLSA overtime requirements because they are employed in a *bona fide* professional, administrative, or executive capacity).

## VI.   CONCLUSION

This court finds that McDaniel has failed to present sufficient evidence to survive a motion to dismiss on his due process claim as to the positions of Athletic Director and Head Football Coach. Further, this court concludes, as it must, that McDaniel has failed to allege a viable claim under the First Amendment's protected free speech doctrine, as well as under the FLSA. The School District has satisfied its burden, and this court **GRANTS** the School District's Motion to Dismiss **[Docket no. 44]** as it regards these named claims.

SO ORDERED, this the 31st day of August, 2021.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

---

[14] a) Minimum wage and maximum hour requirements
The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall **not** apply with respect to--
  (1) any employee employed in a bona fide executive, administrative, or professional capacity (**including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools**), or in the capacity of outside salesman…"

29 U.S.C.A. § 213 (West) (emphasis added).